Filed 6/5/14  P .v. Brown CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>PAUL WILLIAM BROWN,<br><br>      Defendant and Defendant.<br><br>_____<br><br>In re PAUL WILLIAM BROWN,<br><br>      On Habeas Corpus | A138044, A138991<br><br>(Mendocino County<br>Super. Ct. No. CR11-16652) |

Defendant Paul William Brown pleaded no contest to one count of robbery.  The trial court suspended imposition of sentence and placed defendant on three years formal probation.  While on probation, defendant was arrested for reckless driving, prompting the filing of a probation revocation petition.  Defendant admitted the violation and the trial court terminated probation and sentenced defendant to an aggravated state term of five years in prison.  In his appeal and his concomitantly filed petition for writ of habeas corpus,[1] defendant contends the trial court violated his right to due process by failing to initiate proceedings to determine his competency at the time it accepted defendant's no contest plea.

---

[1]     We previously denied defendant's request to consolidate his habeas petition pending further consideration of the appeal.  We now grant consolidation of the appeal and petition.

1

We reject defendant's attempt to challenge the validity of his plea, finding it barred by the absence of a certificate of probable cause. Similarly, we find his petition for writ of habeas corpus procedurally barred. Therefore, we dismiss his claims.

## I. BACKGROUND

### A. *Underlying Plea and Probation*

According to the probation report, on March 7, 2011, Fort Bragg police officers responded to a reported altercation that possibly involved a carjacking attempt. Defendant was identified and apprehended walking down the sidewalk near to the location of the incident. The victim said she had just parked her car when defendant walked by and told her to be careful about an on-coming vehicle. She reported that the next thing she knew defendant had grabbed her from behind and was struggling to get her car keys out of her hand. A bystander helped pull defendant away from the victim. He thought defendant was struggling to get the victim's purse. Defendant fell to the ground but got up and walked off. Defendant told the police he was high on cocaine and alcohol and he angrily grabbed her car keys, believing she had made a derogatory comment about him.

On March 21, 2011, defendant pleaded no contest to second degree robbery in exchange for dismissal of the attempted carjacking charge and a driving while intoxicated charge in an unrelated case. At that hearing, the trial court questioned defendant extensively regarding the rights defendant was sacrificing by entering a no contest plea. Specifically, the trial court asked defendant whether he understood and knowingly waived his rights to: (1) "a speedy public trial either before a judge or a jury"; (2) "confront and cross-examine any witnesses testifying against you"; (3) "present evidence on your own behalf"; and (4) "remain silent and not to incriminate yourself." Defendant responded that he did. The trial court also informed defendant of his right to a preliminary examination, at which "the prosecution has the burden to show that there's reasonable cause to believe that a felony was committed and that you are guilty of that offense." Defendant stated that he understood this right and waived it. Defendant also stated that he was entering the plea "freely and voluntarily" and that no one had

threatened him or otherwise induced his plea. Defendant agreed that he had had sufficient time to discuss the facts of his case, his rights, and his defenses with his attorney, and that he did not need any additional time to discuss the matter with his lawyer. Defense counsel noted that "there's an issue as to whether [defendant] actually had possession of the car keys," but that defendant had decided "to take advantage of this [plea] agreement" because "[h]e thinks that it's in his best interest."

The trial court advised defendant that the maximum possible sentence for the robbery charge was five years, and defendant stated that he understood his exposure to this sentence. Defendant also said that he understood numerous advisements from the trial court regarding the terms of his probation and the consequences of violating them. Additionally, the trial court noted that defendant had completed a "Tahl Waiver" for his driving under the influence case, which formally waives all of the rights described above, verifying that defendant had "read and understood this form before [he] initialed and signed it." Finally, when interviewed by the probation department, defendant characterized his medical and psychological health as "good." At no point before or during the plea hearing did defense counsel express any concerns about defendant's competence or mention his purported developmental disability, nor is there any record of unusual statements or behavior by defendant that might have raised concerns for those in the courtroom.

## B.     *Probation Revocation and Sentencing*

On January 1, 2013, while on probation for the robbery, a deputy sheriff observed defendant driving through Fort Bragg at approximately 90 miles per hour, in zones with posted speed limits of 25 and 35 miles per hour. The officer activated his lights and siren and pursued defendant. Defendant did not pull over, but instead led the officer on a high-speed chase. Defendant passed cars using the center turn lane and endangered pedestrians, with three drivers later telling officers that they nearly crashed due to defendant's recklessness. When defendant was ultimately detained and questioned, he said that he was driving fast because he was "pissed off."

On January 3, 2013, a probation revocation petition was filed, and defendant admitted the violation on January 14, 2013. After defendant admitted the violation, but before sentencing, his step-father submitted a handwritten note stating that defendant was "only one point above being legally retarded . . . ." In support of this assertion, defendant's step-father submitted a psychological report from September 2009, prepared by Albert J. Kastl, Ph.D., to "assess [defendant's] cognitive ability, academic achievement, and adaptive functioning." Also considered in the report was "the possibility of autistic disorder." At the time of the report, defendant was 29 years old.

Prior to evaluating the defendant, Kastl reviewed a number of records, including a 1993 assessment by psychologist Joanna Abbott, when defendant was 13 years old. Abbott noted that defendant had been receiving special education services for six years for "learning disabilities and emotional problems." "Major concerns were in the area of social/emotional functioning." Defendant was again evaluated at age 17 by a school psychologist, at a time when his cumulative GPA was 1.3 and he "still had difficulty maintaining interpersonal relationships and exhibited inappropriate behaviors" that "require services for a seriously emotionally disturbed youngster."

By the time Kastl evaluated defendant at age 29, he found defendant "could grasp only basic conceptual similarities," there were "prominent" difficulties with his "attention and concentration," as well as "measures of processing speed." Kastl indicated that his I.Q. score "reflects quite a distinct decline when results are compared with earlier findings, with scores in the low-average to average ranges." He determined defendant "can follow simple directions" but lacks the ability to sustain communication beyond 15-30 minutes; he cannot decipher reading material at the fourth-grade level. Kastl opined that defendant "is currently functioning at the lower end of the borderline range of intellectual functioning." Kastl found "no evidence of autistic disorder." Kastl noted defendant "appears to be an individual . . . who would benefit from services similar to a person with mental retardation."

The handwritten note from defendant's step-father, along with the 2009 psychological report, was attached to the probation report filed with the court. Also

4

attached to the probation report, was a handwritten note from defendant, asking for leniency.

At the sentencing hearing, defense counsel argued for a low term of imprisonment and asked the court to consider defendant's mental status as a mitigating circumstance, given "an undiagnosed and unknown cognitive disability." The trial court noted that it had reviewed the psychological report from 2009 and that it appeared that defendant "is borderline mentally retarded." The court explained that although this might be considered a fact in mitigation, it also made defendant "more dangerous" and "a huge concern to the Court." The court further stated that "in a perfect world[,] there would be ways to address his issues and protect public safety. I'm not sure if there are sufficient services available to protect the public or to address effectively what it is about him that makes him dangerous, and that's a very sad circumstance . . . ."

## II. DISCUSSION

Section 1237.5 provides that, absent statutory exceptions not relevant here, "[n]o appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere." (See also Cal. Rules of Court, rule 8.304(b) [to appeal from a superior court judgment after plea of guilty or nolo contendere, defendant must file, in addition to notice of appeal, statement for issuance of a certificate of probable cause, which the superior court must rule on within 20 days after statement filed]; *People v. Lloyd* (1998) 17 Cal.4th 658, 663 [compliance with section 1237.5's requirement essential to maintain appeal challenging validity of guilty plea or plea of nolo contendere].)

Penal Code section 1237.5 is not a pointless technicality. By requiring a defendant who has pleaded guilty to obtain a certificate of probable cause to appeal, section 1237.5 promotes judicial economy by weeding out frivolous guilty plea appeals. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1095 (*Mendez*).) "Its assumption is that, as a general matter, a judgment of conviction entered on a defendant's plea of guilty or nolo contendere does not present any issue warranting relief on appeal, and hence should not be reviewed thereon." (*Id.* at p. 1097.)

5

Nevertheless, a certificate of probable cause is not required when the defendant's appeal is based on search and seizure issues or grounds that arose after his plea was entered and do not affect the plea's validity. (*People v. Panizzon* (1996) 13 Cal.4th 68, 74; Cal. Rules of Court, rule 8.304(b).) Defendant tries to squeeze his appeal into the latter exception, arguing not so much on the validity of his underlying plea as the manner in which the trial court failed to consider his mental competency at the time of sentencing. By this argument, defendant hopes that we will overlook the stated objective of his appeal, i.e., "a complete reversal." Alternatively, defendant seeks "a limited remand" to determine whether "a retrospective competency hearing can be held."

In determining whether an appeal falls within an exception to the certificate of probable cause requirement, "the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." (*People v. Ribero* (1971) 4 Cal.3d 55, 63, superseded by statute on another ground as stated in *In re Chavez* (2003) 30 Cal.4th 643, 656.) A defendant may not avoid the requirement "by strategic maneuverings." (*People v. Manriquez* (1993) 18 Cal.App.4th 1167, 1170.) Here, defendant contends the trial court erred by failing to have his competency assessed pursuant to Penal Code section 1368 at the time of his plea. The California Supreme Court has declared that "mental incompetence issues are indeed certificate issues, inasmuch as they are questions going to the legality of the proceedings, and, specifically, the validity of his guilty plea." (*Mendez, supra,* 19 Cal.4th at p. 1100.) Because the defendant in *Mendez* failed to secure a certificate of probable cause before challenging his mental competence to enter a plea, the high court held that the appeal needed to be dismissed. (*Id.* at p. 1104.) In so concluding, the *Mendez* court instructed that the requirement for a certificate of probable cause "should be applied in a strict manner." (*Id.* at p. 1098.)

Because defendant's appeal, at bottom, challenges the validity of his plea, he was required to obtain a certificate of probable cause. (*Mendez, supra,* 19 Cal.4th at pp. 1094-1097.) Having failed to do so, his appeal must be dismissed. (*Id.* at pp. 1099-

1100, 1104, *In re Chavez, supra,* 30 Cal.4th at p. 651; *People v. Stubbs* (1998) 61 Cal.App.4th 243; *People v. Manriquez, supra,* 18 Cal.App.4th at p. 1170.)

The same is true for his petition for a writ of habeas corpus. As our Supreme Court has explained, "the certificate of probable cause must be obtained regardless of other procedural challenges being made. For example, a defendant who has filed a motion to withdraw a guilty plea that has been denied by the trial court still must secure a certificate of probable cause in order to challenge on appeal the validity of the guilty plea. [Citations.] A defendant who challenges the validity of such a plea on the ground that trial counsel rendered ineffective assistance in advice regarding the plea may not circumvent the requirements of section 1237.5 by seeking a writ of habeas corpus. [Citations.]" (*In re Chavez, supra,* 30 Cal.4th at p. 651.)

Requiring a certificate of probable cause makes good sense in this case, given the overlapping nature of defendant's filings. Indeed, defendant's habeas petition is nothing more than an alternative appeal.[2] Accordingly, defendant cannot circumvent the certificate of probable cause requirement by passing off his claim as a petition for writ of habeas corpus. (*In re Chavez, supra,* 30 Cal.4th at p. 651; *In re Brown* (1973) 9 Cal.3d 679, 683; *People v. Ribero*, *supra,* 4 Cal.3d at pp. 62-63.)

## III. DISPOSITION

The appeal and petition for writ of habeas corpus are dismissed.

---

[2] The habeas petition includes an additional psychological evaluation conducted by Kastl on May 30, 2013. This evaluation of defendant, which took place in San Quentin, occurred long after sentencing.

_____
REARDON, J.


We concur:


_____
RUVOLO, P.J.


_____
RIVERA, J.


8